UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 06-00010 (ADM/JSM)

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,         STANDBY COUNSEL'S POSITION
                                       REGARDING SENTENCING; AND
v.                                  ARGUMENT FOR DOWNWARD
                                       DEPARTURE
ROBERT B. BEALE,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTRODUCTION

      Defendant Robert Beale represents himself in these proceedings. The undersigned files this independently, setting forth factors that the Court might wish to consider in determining what type and length of sentence might be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a); including to suggest that downward departure is appropriate on several alternative bases.

      The undersigned has informally discussed the sentencing position letter filed by the defendant with U.S. Probation Officer Matthew Tveite but has not received information concerning any follow-up report, other than the Probation Officer's general inclination that he does not expect not to make any significant changes. Likewise, the undersigned has not received a copy of the sentencing position filed by the defendant. Because it appears that the sentencing positions, including any amended report, will be delayed for some undetermined period of time,

1

the undersigned hereby requests the opportunity to file an amended standby sentencing filing when that process of exchange is complete.

## FACTS

The defendant was convicted following a jury trial which provided a very full presentation of the facts leading to the charges. Mr. Beale's self-representation effort produced an openness of evidentiary presentation seldom seen in adversary proceedings as he almost never objected to the government's presentation of evidence, and he surrendered to government objections even where the Court might have ruled in his favor. The result was a very open, accessible account of all of the transactions underlying the charges.

The evidence clearly showed that over a period of years Mr. Beale very openly defied the taxing authority of both Minnesota and the United States in the classic stance of a "tax protester." While the government's offered calculation was of a tax protester seeking to hide assets from impulses of pure greed, it is clear that Mr. Beale was employing what he thought would be a means of leveling the field in an attempt to force the authorities to first engage in dialogue about his tax positions and thereafter allow him an opportunity for civil resolution of the disputation he sought. The government's theory of a greedy and arrogant citizen seeking to avoid fair payment of taxes simply cannot be reconciled with the facts of Mr. Beale's life in general, including his abundance of wealth at the outset of his idealistic undertaking, his acknowledged empathetic generosity to the less fortunate and his complete lack of any reasonable motive to acquire more money. Nor can it be reconciled or with the complete financial ruin Mr. Beale endured as a result of taking his principled position.

While his positions with the taxing authorities may appear foolish in retrospect – and he

has made clear that he now regrets taking them -- it is clear that Mr. Beale was a man of considerable wealth for whom the additional 1.6 million he is alleged to have hidden was an insignificant sum.  The facts, including Mr. Beale's history and the positions taken in this case, clearly reflect a man whose actions were taken on the basis of a principled, if serious misguided and mistaken interpretation of the tax laws, and not from reasons of greed or inability to pay his taxes.

Although not investigated or recounted in the PSR – which is of course largely based on a digest of the government's documents, theories and positions –  Mr. Beale has enjoyed a life full of professional success and community involvement.  He has often taken principled, if unpopular positions and acknowledges that has often suffered the impairments attending his generally meticulous, even religious, adherence to principles he has examined and believes may have some less than fully examined merit.  Robert Beale will rather readily acknowledge that his wishing to help understand and advocate for unpopular positions has not made for a more easy life.[1]  As the few and brief testimonials Mr. Beale's case has generated on his behalf at this sentencing phase attest, he is generally a man who operated on the basis of desire to use his wealth and position to help his community and to help those who lacked his advantages in life.  While he was urged by family and friends not to take on the IRS, and those closest to him during this period describe a man indisputably creating a calamity for himself, they make clear it was not from greed or

---

[1] An example from early in his career, while still a graduate student at MIT during the Viet Nam war, was Mr. Beale's acceptance of the nomination of some faculty members and other students to represent the position supporting the conduct of the war in Viet Nam in a planned debate with the renowned philosopher and MIT professor, Noam Chomsky.  It was obviously not a comfortable or a particularly sought after role for a scholar seeking the advantages of Ivy League graduation, to represent a clearly minority position against a popular and renowned philosopher in a very public setting.  But his principles of the time  required it.

arrogance.  He was seriously out of synch with his government on the subject of taxes, but he had no avaricious motivations.  As one local reporter described it:

> A trial that at times seemed to exist in parallel universes, with accepted law in one dimension and Robert Beale in the other, came back firmly to earth Wednesday. Ignoring Beale's indignation, religious beliefs and obscure interpretations of the U.S. Constitution and philosophy, a federal jury in Minneapolis took only two hours to find him guilty of all seven counts brought against him for tax evasion, conspiracy and fleeing authorities.  Minneapolis Star Tribune 4/30/08.

Mr. Beale had earlier publically acknowledged that he ought not have undertaken his mission against the tax system and only wished he could turn back the clock.[2]  Beale's intense identification with this proposed tax revolution was religiously sincere, credible and nonmaterial, even if the results this led to are not legally justifiable or ones he would do again.  Since being charged in this case he has slowly suffered the loss of everything he had and has now engaged for a long time in a profound meditation on the dangers of unbridled and frenzied tax protest idealism.  He knows now that he failed to anticipate the inevitability of the government's authoritative position in the outlaw/tax hero debate he invited, and he only wishes to have some opportunity to set about repairing what's left of his life.

ARGUMENT

I.

IN CALCULATING THE SENTENCE, DEFENDANT ROBERT BEALE SHOULD RECEIVE A DOWNWARD DEPARTURE OR VARIANCE FROM THE SENTENCE RECOMMENDED BY THE GUIDELINES AND THE PRESENTENCE REPORT

A.) FACTORS WARRANTING DEPARTURE:

---

[2] "In hindsight, I believe I was not wise. I'm sorry I even took this mission. ... I was very naive." *Ex-CEO regrets 'mission' to take on IRS*, Minneapolis Tribune 12/30/07.

This Court should consider whether a heartland downward departure is appropriate in Mr. Beale's case because of the unusual circumstance and the magnitude of the loss his has suffered, the result of misguided idealism; and for the same reason should consider downward departure under §5K2.20. Aberrant Behavior.  Mr. Beale's presents a case fitting the §5K2.20 authorization to depart downward where the defendant's conduct "represents a marked deviation ... from an otherwise law-abiding life." *U.S. v. Desantiago-Esquivel*, 526 F.3d 398, 400 (8th Cir. 2008).  A district court may grant a general downward departure pursuant to §5K2.0 if it determines that a mitigating circumstance, either in kind or to a degree, was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and the case falls outside the heartland of cases covered by the guidelines. *United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006).  And the guidelines permit consideration of an aggregation of factors in determining whether a case is outside the heartland. *See United States v. Simpson,* 7 F.3d 813, 820 (8th Cir. 1993).  Mr. Beale's case presents the rare and extraordinary case whose characteristics and circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing because of his manifest lack of understanding of the seriousness of the course he chose and his misguided belief that he was putting only his wealth at risk.

For the same reasons, and because he seemed not to be able to resist the impelling influence of his religious-like study of the tax protest literature, there is evidence in the behavior constituting the offense of an inability to fully exercise the power of reason to avoid it, making a

5

departure appropriate under §5K2.13.[3] The diminished capacity language of the Policy Statement U.S.S.G. §5K2.13 does not require proof that the offense would not have been committed except for Defendant's mental condition, only that it comprised a contributing factor in the commission of the offense. *United States v. Ruklik*, 919 F.2d 95 (8th Cir. 1990). Moreover, it is not necessary that the defendant was unable to understand the wrongfulness of his behavior, only that the diminished capacity affected his ability to control his behavior. *United States v. Lighthall*, 389 F.3d 791 (8th Cir. 2004).

In addition, there should be careful consideration of Mr. Beale's age and excellent professional record, which have combined in a significant legacy of contributions to community. The PSR does not detail Mr. Beale's considerable civic accomplishments, some of which have been reported in the Press accounts surrounding his case, but most of which have been ignored in the sensational coverage he has attracted. In addition, his custody at Sherburne for an extended period entitles him to some variance credit.

II.

THE § 3553(A) STATUTORY SENTENCING FACTORS REQUIRE THAT MR. BEALE BE SENTENCED TO A TERM LESS THAN CALLED FOR BY THE GUIDELINES CALCULATION IN THE PSR

In the Supreme Court's landmark sentencing decision in *United States v. Booker*, 543 U.S. 220 (2005), was remedied the Sixth Amendment problems with judicial fact-finding under the

---

[3] The psychological evaluation by Dr. James Gilbertson finds that Mr. Beale's profile "mirrors" some autistic features in his ability to over focus in "incredible detail" and that he has some "social disconnect issues" which are manifested in personality traits of stubbornness and obsessiveness." That he is "wedded to what is logical and what can be proven" is an explanation for both his great professional and business success, and also his present difficulty.

U.S. Sentencing Guidelines by making the Guidelines "effectively advisory" and fashioning a new "reasonableness" standard for appellate review of sentences. *Id.* at 245-46, 260-65. In *United States v. Rita*, 127 S.Ct. 2456, 2463 (2007) the Court examined the standards appropriate to judge within-guideline sentences and issued four opinions that perhaps raise more questions than they answered. If the opinions in *Rita* left some measure of uncertainty concerning the Court's Sixth Amendment jurisprudence with the Justices displaying somewhat divergent views on the many issues raised by the *Booker* remedy of an advisory guideline system, in two more recent decisions, *Gall v. United States*, 128 S. Ct. 586 (2007), and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Court has made clear that district court judges have substantial discretion to impose non-Guidelines sentences and need not find "extraordinary circumstances" in order to justify such sentences under the 18 U.S.C. §3553(a) factors. Trial courts neither must nor should follow the Guidelines: ". . . the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita*, 127 S. Ct. at 2465.

A.) <u>Application of the §3553(a) Statutory Sentencing Factors to the Facts of this Case</u>**:**

The following factors under §3553(a) factors are to be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

(1) <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>; Mr. Beale is 65 years old and as the various testimonials report, his conduct in this case was not typical of how he had conducted his life before the point of his adoption of the tax protest stance. His problems here were induced by what he viewed as a set of idealist beliefs he learned from Irwin Schiff and the "tax honesty" movement and other like individuals and

7

organizations. It is a sometimes logically appealing set of complex theories that might be viewed as either idealism or folly, depending on one's perspective. In many cases, they represent a *post hoc* rationalization for nonpayment of taxes by those who are unable to do so. But it is clear that Mr. Beale adopted them with a religious zeal and without any such need. His principled approach has now disconnected him from all material wealth as, in the process of following the tax protest creed, he put everything he had acquired from his long history of professional successes at risk and he has now lost everything.

(2) The need for the sentence imposed—

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   Mr. Beale has already suffered the loss of the entire proceeds of his life's work. He has endured a humiliating federal criminal prosecution and has suffered the loss of his marriage, business and all of his possessions.

   While the offense is indisputably serious, and has been proven by the Government to the satisfaction of the jury, the evidence showed at trial that Mr. Beale operated from a severely misguided understanding of the law of taxation, and not from any desire for personal financial gain. The need to promote respect for the law and its processes thus requires some accounting in sentencing Mr. Beale for the fact that he has already lost so much. His conduct of his own defense punctuated that his actions were consistently ordered from the beliefs he developed in his misguided study. The trial only emphasized the details of the tragedy.

(B) To afford adequate deterrence to criminal conduct; The object of primary deterrence is already satisfied by Mr. Beale's complete ruin and he has acknowledged the same in his open

discussions with the local Press in which he publically regrets having taken on the tax authorities. The issue of secondary deterrence of others who might contemplate doing what he was involved in is difficult to analyze because of the unusual station from which Mr. Beale began his undertaking: It is so highly improbable that any other person of his wealth, influence and education would follow his lead that a calculation of the likelihood is truly impossible.

In truth, deterrence is generally thought of in terms of the prevention of socially undesirable behavior by fear of punishment; coercing citizens into obeying the law. The idea is that a person who might otherwise have committed a crime is restrained by the thought of the unpleasant consequences of detection, trial, conviction, and sentence and a distinction is often made between general deterrence, which signifies the deterrent effect of the threat of punishment, and specific or individual deterrence, which signifies the effect of actual punishment on the offender. Mr. Beale has himself supplied the deterrence example in both senses: He has effectively forfeited everything material and nonmaterial he has acquired in his lifetime of hard work and dedication to profession, family and business and has made himself an example already of the utter folly of defying the taxing authorities.

(C) <u>To protect the public from further crimes of the defendant</u>; Mr. Beale is so unlikely to again violate the law that it is impossible to imagine. He has already suffered the horrendous consequences of his mistakes over a long period; has now renounced his protest to the full extent his dignity will allow, by saying that he only wishes he could turn back the clock; and has now accepted responsibility for the harm he brought to his family, business and himself.

(D) <u>To provide the defendant with needed educational or vocational training, medical care, or</u>

<u>other correctional treatment in the most effective manner</u>; Mr. Beale is a highly educated and brilliant engineer and entrepreneur.  He has now advanced beyond his working years, has lost everything and will start from naught if he survives his sentence.  He has laid waste to any possible retirement and now desires only to focus on his religious dedication, away from the world of money and taxes. Both society and this defendant would best be served by a sentence which allows him the opportunity at this late stage in his life to start over as a productive citizen at the less advantaged social level he has chosen for himself.

## CONCLUSION

The defendant should be sentenced in a range lower than that recommended by the PSR calculation.  For the foregoing reasons, it is respectfully suggested that he be sentenced in a range comparable with Lee Stangni, with variance credit for the long period he has spent at the Sherburne County Jail, together with a term of probation and community service sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553.

Date: July 14, 2008                                              Respectfully submitted,
                                                                 <u>S/ Dean S. Grau</u>
                                                                 Dean S. Grau
                                                                 Attorney at Law
                                                                 4910 IDS Center
                                                                 80 South 8th Street
                                                                 Minneapolis, MN 55402
                                                                 (612)338-3646

                                                                 STANDBY COUNSEL FOR THE DEFENDANT